UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

M&I EQUIPMENT FINANCE COMPANY,
formerly known as M&I FIRST NATIONAL
LEASING CORP.,

                          Plaintiff,

              vs                                      7:06-CV-54

LEWIS COUNTY DAIRY CORP., AHAVA FOOD
CORP., and MOISE A. BANAYAN,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

BOND, SCHOENECK & KING, P.L.L.C.      LOUIS ORBACH, ESQ.
Attorneys for Plaintiff                       STEPHEN A. DONATO, ESQ.
One Lincoln Center
Syracuse, New York 13202-1355

ANTONUCCI LAW FIRM                    DAVID P. ANTONUCCI, ESQ.
Attorneys for Defendants
Bonadio Building
12 Public Square
Watertown, New York 13601

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      Plaintiff M&I Equipment Finance Company ("plaintiff" or "M&I"), formerly known as

M&I First National Leasing Corp., brings this action against defendants Lewis County Dairy

Corp. ("LCDC"), Ahava Food Corp. ("Ahava"), and Moise A. Banayan ("Banayan")

(collectively "defendants") for breach of contract. Defendants assert counterclaims for

breach of contract, fraud, and prima facie tort. Plaintiff moves for summary judgment on its breach of contract claim pursuant to Federal Rule of Civil Procedure ("Rule") 56(c), and to dismiss defendants' counterclaims pursuant to Rule 12(b)(6). Defendants oppose. Oral argument was heard on May 12, 2006, in Utica, New York. Decision was reserved.

## II. FACTS

Plaintiff M&I, a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin, is a commercial equipment financing company; defendant LCDC, a New York corporation with its principal place of business in Brooklyn, New York, is a dairy processing business; and defendant Ahava, a New York corporation with its principal place of business in Monsey, New York, is a specialty foods distributor. Defendant Banayan, a resident of New York, is the president and primary shareholder of both LCDC and Ahava.[1]

On August 1, 2004, M&I entered into a lease agreement with LCDC and Ahava ("the lease") whereby plaintiff agreed to finance defendants' purchase of biological wastewater treatment equipment ("the equipment") from Hydroxyl Systems, Inc. ("Hydroxyl").[2] The total cost of the equipment, as agreed upon by defendants and Hydroxyl, was $1,463,300. Banayan duly accepted and signed the lease, as well as several addendums which were incorporated into the lease, on behalf of LCDC and Ahava. According to the terms of the lease, plaintiff was to purchase the equipment from Hydroxyl and lease it to defendants for sixty months, at which point defendants would have the option to purchase the equipment

---

[1] Jurisdiction over this action is based on 28 U.S.C. § 1332(a)(1).

[2] For reasons unknown, neither party has seen fit to bring Hydroxyl into this action despite the fact that it plays a significant role in this dispute. Although Hydroxyl was not a party to the lease, it maintained a contractual relationship with defendants and was also involved in significant dealings with plaintiff. Moreover, the circumstances surrounding its involvement with the parties directly relate to the lease.

from plaintiff. The terms of the lease did not require that plaintiff deliver the equipment upon execution of the lease, nor did they require that plaintiff make payments to Hydroxyl pursuant to any deadlines or schedules. The terms of the lease did, however, provide that if the equipment was not delivered by the end of the calendar year (2004), the parties agreed to execute an amendment to the lease modifying the original payment schedule to maintain the economic yield anticipated by plaintiff. At the time the lease was executed, Hydroxyl had not yet manufactured the equipment.

A few days before signing the lease, the parties also executed two Delivery and Acceptance Certificates ("certificates") authorizing M&I to make an initial payment to Hydroxyl, and a reimbursement payment to defendants for a down payment they previously made to Hydroxyl. Each certificate contains introductory language and four separate sections. The introductory language refers to the lease between the parties. Section I contains three options pertaining to the status of the equipment – not yet received, received in part, or received in full. There is a box and initial line next to each option. Section II contains a line for the vendor (payee), invoice number, and payment amount. Section III and IV contain various waivers and disclaimers. On July 28, 2004, Banayan signed and dated each certificate. At the time of signing, with respect to the first certificate, a space for the lease date in the introductory language was left blank; in Section I, the box next to the option acknowledging that the equipment had not yet been received was marked but the initial line was left blank; and in Section II, the vendor ("Hydroxyl Systems"), invoice number ("4327"), and payment amount ("$572,120.00") were listed.[3] With respect to the second certificate, the

---

[3] Plaintiff provides evidence for, and defendants do not clearly dispute, the proposition that, with the exception of the blank spaces for the lease date and Banayan's initials, the certificates were completed in this
(continued...)

space for the lease date in the introductory language was also left blank; in Section I, the box next to the option acknowledging that the equipment had been received in full was marked but the initial line was left blank;[4] and in Section II, the vendor ("Lessee Reimbursement"), invoice number ("downpymt"), and payment amount ("$13,200.00") were listed. Plaintiff subsequently filled the blank spaces for the lease date in the introductory language and Banayan's initials next to the marked boxes in the Section I of both certificates. Banayan also signed a Continuing Guaranty ("the guaranty") in his individual capacity, rendering himself personally liable for the lease obligations of LCDC and Ahava.

Pursuant to the lease and certificates, plaintiff made payments in the amount of $572,120 to Hydroxyl, and $13,200 to defendants.

Thereafter, defendants began making payments to M&I under the lease. According to defendants, in or about November 2004, plaintiff began to doubt Hydroxyl's ability to produce the equipment and requested from Hydroxyl collateral or a bond for amounts paid and assurances that future payments would be supported by collateral. Hydroxyl refused plaintiff's request, claiming it was not something any of the parties had previously agreed upon. As a result, plaintiff ceased making payments to Hydroxyl and, in turn, Hydroxyl halted production of the equipment. It is unclear exactly when the cessation of payment and production occurred. In any event, defendants never received the equipment.

---

[3](...continued)
fashion at the time of signing. See Crowell Suppl. Decl. 1-2, Ex. A. In his affidavit, Banayan states that he did not fill the lease dates or initials on either certificate and that they were "executed in blank on the first page" (Banayan Aff. ¶¶ 9, 11); however, he does not clearly dispute that the other areas were completed in the fashion described above.

[4] Plaintiff concedes that this was a typographical error and that the box next to the option acknowledging that the equipment had not yet been received should have been marked.

On December 30, 2004, because the equipment had not been delivered, the parties executed an amendment to the lease ("amendment") as they had agreed to do pursuant to its original terms. The amendment modified the original payment schedule and gave plaintiff the right to terminate the lease in the event Hydroxyl failed to deliver the equipment; however, it also provided that in any event plaintiff would not terminate the lease before June 1, 2005, so long as defendants fulfilled their obligations.

At some point, defendants became aware of M&I's cessation of payments to Hydroxyl. As a result, defendants did not make the January 2005 lease payment or any payment due thereafter. Until that time, defendants had made all payments under the lease from August-December 2005, totaling $59,949.18. Plaintiff demanded payment and defendants refused. Plaintiff now seeks to recover the amounts it advanced to Hydroxyl ($585,320),[5] less the amounts paid by defendants under the lease ($59,949.18), plus interest. Thus, the total amount sought by plaintiff is $658,994.02.[6]

## III. DISCUSSION

### A. Motion for Summary Judgment

M&I moves for summary judgment on its breach of contract claim pursuant to Rule 56(c). Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); Silver v. City Univ. of

---

[5] This amount includes the $572,120 payment to Hydroxyl and the $13,200 reimbursement payment to defendants.

[6] This amount is based on the unpaid balance due under the lease plus interest as of March 16, 2006 ($609,575.84) (Crowell Decl. ¶ 19), plus interest calculated at $164.18 per day from that date until today ($49,418.18).

New York, 947 F.2d 1021, 1022 (2d Cir. 1991).  The court will not try issues of fact on a motion for summary judgment, rather it will determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law."  Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997).  In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).  In sum, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993).

   M&I moves for summary judgment on the ground that defendants breached the unambiguous terms of the lease when they stopped making payments in January 2005.  Defendants contend that plaintiff breached the lease prior to that time when it altered the certificates without Banayan's approval, and, alternatively, when it refused to complete the

purchase of the equipment after Hydroxyl refused its request for collateral and/or other assurances. The terms of the lease as amended are unambiguous and defendants' failure to make a payment in January 2005 would certainly constitute a breach if plaintiff had not previously committed a breach. Thus, the central issue is whether the undisputed facts show that the lease as amended was still in effect in January 2005. If that question is answered in the affirmative, plaintiff's motion for summary judgment will be granted.

As to defendants primary contention – that plaintiff breached the lease when it altered the certificates without Banayan's approval – Wisconsin law[7] provides that "'[w]here a person intending to enter into a contract delivers a writing containing blanks evidently meant to be filled, this creates in the receiver an implied authority to complete the instrument by filling the blanks in the way apparently contemplated by the maker, with matter in general conformity to the character of the writing.'" Norman F. Thiex, Inc. v. Gen. Motors Acceptance Corp., 259 N.W. 855, 859 (Wis. 1935) (quoting J.R. Watkins Co. v. Keeney, 201 N.W. 833, 838 (N.D. 1924)); see Sphatt v. Roth, 34 N.W.2d 222, 225 (Wis. 1948); Friend v. Yahr, 104 N.W. 997, 999-1000 (Wis. 1905).

In this case, it is undisputed that Banayan signed and dated both certificates. It is also undisputed that each certificate was substantially completed except for two blank spaces on each: the space for the lease date in the introductory language, and the space for

---

[7] In this case, both parties agree that Wisconsin law governs the breach of contract claims. Indeed, the lease, the amendment, and the guaranty all contain choice-of-law clauses stating that those instruments shall be governed by, and construed in accordance with, Wisconsin law. Moreover, the aforementioned agreements are sufficiently related to Wisconsin and application of Wisconsin law would not violate a fundamental public policy of New York. See Gambar Enters., Inc. v. Kelly Servs., Inc., 69 A.D.2d 297, 303 (N.Y. App. Div. 4th Dep't 1979) (citing A.S. Rampell, Inc. v. Hyster Co., 3 N.Y.2d 369, 381 (1957); 8 N.Y. Jur. Conflict of Laws § 24); 19A N.Y. Jur. 2d Conflict of Laws §§ 34-35 (2005). Thus, while plaintiff's motion for summary judgment will be assessed according to the procedural mandates of Rule 56(c), Wisconsin law governs the substantive issues.

Banayan's initials next to the previously-marked box in Section I.  By signing certificates with blank spaces, Banayan created in plaintiff an implied authority to complete the certificates by filling the blank spaces upon receipt.  Since plaintiff merely filled the lease date and Banayan's initials, it is reasonable to assume that it filled the blanks in the way contemplated by Banayan; for it is difficult to imagine any other way in which the blanks might have been filled.[8]

Assuming, for the sake of argument, that plaintiff was not impliedly authorized to fill the blanks, defendants' contention still fails.  Under Wisconsin law, the unauthorized alteration of the terms of a written contract discharges the non-altering party from its obligations only if the alteration is material.  See Restatement (Second) of Contracts § 286; Fuller v. Green, 24 N.W. 907, 909 (Wis. 1885).  An alteration is material when, if given effect, it would vary the legal relations as between the parties or as between a party and a third party.  See § 286(2); Fuller, 24 N.W. at 909.

In this case, plaintiff altered the certificates by filling the spaces for the lease date and Banayan's initials as discussed above.  Assuming such alterations were indeed unauthorized, filling the spaces for the lease date did not constitute a breach of the lease or render the certificates invalid because it was not a material alteration.  If given effect, it would in no way change the parties' legal relations.  Likewise, filling the space for Banayan's initials did not constitute a breach of the lease or render the certificates invalid because the boxes

---

[8] Even assuming defendants properly disputed the fact that Banayan signed fully completed certificates except for the two blank spaces, that fact was rendered immaterial for summary judgment purposes when defendants subsequently affirmed plaintiff's payment to Hydroxyl by making payments under the lease and executing an amendment to the lease in December 2004.

next to the initial lines were previously marked at the time Banayan signed the certificates. Thus, neither alteration was material.

Therefore, plaintiff did not breach the lease or render the certificates invalid by filling the blank spaces because it was impliedly authorized to do so, and in any case, the alterations were immaterial.

As to defendants alternative contention – that plaintiff breached the lease when it refused to complete the purchase of the equipment after Hydroxyl refused its request for collateral and/or other assurances – the terms of the lease clearly set forth plaintiff's obligations with respect to the purchase of the equipment:  plaintiff must "purchase the Equipment as set forth in the 'Equipment Location and Description' section of this Lease, and simultaneously lease such Equipment to Lessee."  (Notice of Mot. Ex. A.)  The terms of the lease did not require that plaintiff deliver the equipment upon execution of the lease, nor did they require plaintiff to make payments to Hydroxyl pursuant to any deadlines or schedules. Moreover, despite defendants' assertions that plaintiff's refusal to fund the lease "had become obvious" (Defs.' Mem. 8) and constituted a repudiation of its obligations to purchase the equipment from Hydroxyl, there is no evidence in the record indicating that plaintiff definitively refused to purchase the equipment from Hydroxyl, or that plaintiff would not have purchased the equipment at a later date.  The fact that M&I and Hydroxyl were in disagreement over M&I's request for collateral and assurances of future collateral did not entitle defendants to stop making payments under the lease.  Therefore, M&I did not breach the lease when it requested from Hydroxyl collateral and assurances of future collateral or because it did not purchase the equipment by January 2005.

The undisputed facts establish that plaintiff did not breach the lease prior to the time defendants stopped making payments in January 2005. The lease as amended was in full force and effect at that time. Defendants breached the lease. Therefore, plaintiff's motion for summary judgment on its breach of contract claim will be granted.

### C. **Motion to Dismiss**

M&I also moves to dismiss defendants' counterclaims pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion to dismiss, the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995). However, factual allegations must be distinguished from "[c]onclusory allegations or legal conclusions masquerading as factual conclusions," as the latter will not be accepted as true. Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks omitted). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). In this regard, Rule 8(a) provides, in relevant part, "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief, and [ ] a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). Thus, the pleading standard is undoubtedly a liberal one. Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). In more definite terms, a plaintiff's complaint will be dismissed for legal insufficiency only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).

### 1. Breach of Contract Counterclaim

M&I moves to dismiss defendants' counterclaim for breach of contract pursuant to Rule 12(b)(6). As discussed above, plaintiff did not breach the lease and is, in fact, entitled to a judgment as a matter of law on its breach of contract claim. Therefore, defendants' counterclaim for breach of contract must be dismissed.

### 2. Fraud Counterclaim

M&I also moves to dismiss defendants' counterclaim for fraud on grounds that they have failed to satisfy the pleading requirements set forth in Rule 9(b), and, alternatively, failed to state a substantive claim under either Wisconsin or New York law.

#### a. Rule 9(b)

Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). In order to comply with the heightened pleading requirements set forth in Rule 9(b), "the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent" – or, in more simple terms, what, who, where, when, and why. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993); see Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). The pleading requirements of Rule 9(b) do not dissipate simply because a party alleges fraud by omission or failure to disclose as opposed to express representation. In other words, a party alleging fraudulent omission must still, to the extent possible, specify what, who, where, when, and why. Additionally, the party alleging fraud must allege facts that give rise to a strong inference of fraudulent intent.

Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir. 1994); see Mills, 12 F.3d at 1176.

In this case, defendants allege that M&I "entered into various negotiations with Hydroxyl and, further, actually, send [sic] representatives to their premises in Canada" (Compl. ¶ 41), "[a]t some point became aware of certain facts concerning the financial and/or ability [sic] of Hydroxyl to design and deliver the equipment" (Compl. ¶ 42), and "entered into certain agreements with Hydroxyl concerning their payment schedule and various other benchmarks for the design and production of the equipment" (Compl. ¶ 43). Defendants also allege that "[t]hese events and the Plaintiff's knowledge of Hydroxyl were not wholly or completely disclosed to the Lessee." Finally, defendants allege that they relied on "the truth and candor of the Plaintiff" (Compl. ¶ 47), and would not have entered into the lease had they known these things.

As stated above, Rule 9(b) requires a specification of the facts surrounding a fraud claim. Defendants simply did not do that in this case. Rather than enumerating the material facts which plaintiff failed to disclose, defendants simply state what the relevant facts concerned, e.g., "the financial and/or ability [sic] of Hydroxyl to design and deliver the equipment." Rather than providing dates or even a temporal frame of reference, defendants use the phrases "[a]t some point" and "around the time" in describing when relevant acts occurred. Defendants have neither explained why plaintiff's failure to disclose this information was fraudulent nor alleged facts that give rise to a strong inference of fraudulent intent. The allegation that plaintiff contacted Hydroxyl to make payment arrangements and set benchmarks for design and production of the equipment prior to the execution of the lease does not give rise to an inference of fraudulent intent on plaintiff's part; in fact, it gives

rise to an inference that plaintiff was intent on fulfilling its obligations under the lease, which, at that time, the parties had no reason to believe would not be executed as planned.  Neither does the allegation that plaintiff failed to disclose "certain facts concerning the financial and/or ability [sic] of Hydroxyl to design and deliver the equipment" (Compl. ¶ 42) give rise to fraudulent intent on plaintiff's part.  At best this allegation is vague, at worst it is unintelligible; but in any case, it does not meet the heightened requirements of Rule 9(b).  Finally, defendants' allegation that "Plaintiff defrauded the Defendants" (Compl. ¶48) is pure legal conclusion and neither explains why plaintiff's alleged omissions were fraudulent nor establishes an inference of fraudulent intent.

Therefore, since defendants have failed to satisfy the pleading requirements set forth in Rule 9(b), plaintiff's motion to dismiss defendants' counterclaim for fraud will be granted.

### b. Substantive Claim

Assuming, for the sake of argument, that defendants' fraud claim meets the pleading requirements of Rule 9(b), it is still subject to dismissal for failure to state a substantive claim.  The parties disagree as to which jurisdiction's laws govern the fraud claim – plaintiff argues that Wisconsin law governs the claim and defendants argue that New York law governs the claim.  To be sure, a federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22 (1941); Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 582 (2d Cir. 2006).  Therefore, since New York is the forum state in this case, New York's choice of law rules apply.  The New York Court of Appeals has held that the necessary first step when a potential choice-of-law problem arises

is to "determine whether there is an actual conflict between the laws of the jurisdictions involved." In re Allstate Ins. Co., 81 N.Y.2d 219, 223 (1993); see Beth Israel, 448 F.3d at 582.  In other words, only in situations where application of the jurisdiction's laws would yield different results, is a choice-of-law analysis necessary.  So before undertaking a choice-of-law analysis, it must be determined whether the laws of Wisconsin and New York would produce different results.

### i. Wisconsin Law

Under Wisconsin law, the elements of common law fraud are as follows:  "(1) the defendant made a factual representation, (2) which was untrue, (3) the defendant either made the representation knowing it was untrue or made it recklessly without caring whether it was true or false, (4) the defendant made the representation with intent to defraud and to induce another to act upon it, and (5) the plaintiff believed the statement to be true and relied on it to his/her detriment." Kaloti Enters., Inc. v. Kellogg Sales Co., 699 N.W.2d 205, 211 (Wis. 2005) (quoting Ramsden v. Farm Credit Servs. of N. Cent. Wis. A.C.A., 590 N.W.2d 1, 7 (Wis. 1998)).  The failure to disclose a material fact is considered a "representation" only if the non-disclosing party is under a duty to disclose. Id. at 211-12.  In Wisconsin, the general rule is that, in the absence of some overriding policy consideration, there is no duty to disclose among parties to an arm's-length transaction.  See Ollerman v. O'Rourke Co., 699 N.W.2d 95, 101 (Wis. 1980).

In this case, defendants' fraud counterclaim is based on M&I's failure to disclose information rather than its express representations.  Moreover, defendants and plaintiff negotiated and entered into the lease at arm's-length.  Finally, there are no policy considerations in this case that would countervail the general rule that no duty to disclose

exists among parties to an arm's-length transaction, e.g., plaintiff did not use superior knowledge to induce defendants to enter into the transaction. Therefore, since plaintiff was not under any duty to disclose the information at issue, defendants have not stated a claim for common law fraud under Wisconsin law.

### ii. New York Law

Under New York law, the elements of common law fraud are "'a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'" Chanayil v. Gulati, 169 F.3d 168, 171 (2d Cir. 1999) (quoting Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970-71 (2d Cir. 1987)); see Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403, 407 (1958).

In this case, defendants allege that plaintiff contacted Hydroxyl to make payment arrangements and set benchmarks for design and production of the equipment prior to the execution of the lease, and its failure to disclose this information constitutes a false representation. This may be so, but as a matter of law, this information is not material. The only thing these allegations demonstrate is that plaintiff was taking steps, albeit prematurely, to meet its obligations to defendants under the soon-to-be-executed lease. Further, because this information is not material, it cannot be said that defendants reasonably relied on plaintiff's "false representation" in agreeing to the terms of the lease. Defendants also allege that plaintiff had some knowledge of Hydroxyl's ability to produce and deliver the equipment and that its failure to disclose this information was a false representation. Aside from the vague nature of this allegation, it is not enough to support a claim for fraud because it would not be in plaintiff's interest to enter into the lease if it had doubts as to Hydroxyl's ability to provide the equipment which it was obligated to provide to defendants. Moreover,

defendants executed the amendment to the lease in December 2004 after gaining knowledge of M&I's concerns regarding Hydroxyl's ability to produce the equipment.

Therefore, since the information which plaintiff failed to disclose was not material and the allegations upon which the fraud claim rests are otherwise untenable, defendants have not stated a claim for common law fraud under New York law and plaintiff's motion to dismiss that claim will be granted.[9]

### 3. Prima Facie Tort Counterclaim

Finally, M&I moves to dismiss defendants' counterclaim for prima facie tort. As with the fraud claim, plaintiff argues that Wisconsin law governs the claim and defendants argue that New York law governs the claim. As stated above, under New York's choice-of-law rules, the necessary first step when a potential choice-of-law problem arises is to "determine whether there is an actual conflict between the laws of the jurisdictions involved." In re Allstate, 81 N.Y.2d at 223; see Beth Israel, 448 F.3d at 582. Since Wisconsin does not recognize such a claim, defendants' counterclaim for prima facie tort would fail under Wisconsin law. Thus, before engaging in a choice-of-law analysis, it must first be determined that the claim would succeed under New York.

Under New York law, "[t]he requisite elements of a cause of action for prima facie tort are (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful." Freihofer v. Hearst Corp., 65 N.Y.2d 135, 142 (1985). New York courts have also held that the alleged tortfeasor must be motivated solely by a "'disinterested malevolence.'" Burns

---

[9] Because defendants have failed to state a claim under the laws of either jurisdiction, no choice-of-law analysis is necessary.

Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 333 (1983) (quoting Am. Bank & Trust Co. v. Fed. Reserve Bank of Atlanta, 256 U.S. 350, 358 (1921)); Backus v. Planned Parenthood of Finger Lakes, Inc., 161 A.D.2d 1116, 1117 (N.Y. App. Div. 4th Dep't 1990). This requirement means "'that the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another.'" Lindner, 59 N.Y.2d at 333 (quoting Beardsley v. Kilmer, 236 N.Y. 80, 90 (1923)).

In this case, defendants do not allege that plaintiff was motivated solely by a disinterested malevolence, in those terms or any others. Even if plaintiff was motivated by a disinterested malevolence toward defendants, clearly it was also motivated, at least in part, by its economic interest in the transaction. See Cohen's W. 14th St. Corp. v. Parker 14th Assocs., 125 A.D.2d 249 (N.Y. App. Div. 1st Dep't 1986). Thus, under New York law, defendants have failed to make out a claim for prima facie tort and plaintiff's motion to dismiss that claim will be granted.[10]

## V. CONCLUSION

The terms of the lease between the parties are unambiguous. Defendants breached those terms when they stopped making payments under the lease in January 2005 because, as a matter of law, plaintiff did not breach the lease prior to this time. Moreover, defendants have not pleaded fraud in accordance with the heightened requirements of Rule 9(b), nor have they stated a substantive claim for fraud under either Wisconsin or New York law. Finally, defendants have failed to state a claim for prima facie tort. Thus, plaintiff is

---

[10] Because defendants have failed to state a claim under the laws of either jurisdiction, no choice-of-law analysis is necessary.

entitled to damages based on the amounts it advanced to Hydroxyl ($585,320),[11] less the amounts paid by defendants under the lease ($59,949.18), plus interest. The total amount to which plaintiff is entitled is $658,994.02.[12]

Accordingly, it is

ORDERED that:

1. Plaintiff's motion for summary judgment is GRANTED;

2. Plaintiff's motion to dismiss defendants' counterclaims is GRANTED; and

3. Plaintiff is entitled to damages against defendants in the amount of $658,994.02.

IT IS SO ORDERED.

The Clerk is directed to enter judgment accordingly.

United States District Judge

Dated:  January 11, 2007
        Utica, New York.

---

[11] As stated above, this amount includes the $572,120 payment to Hydroxyl and the $13,200 reimbursement payment to defendants.

[12] As stated above, this amount is based on the unpaid balance due under the lease plus interest as of March 16, 2006 ($609,575.84) (Crowell Decl. ¶ 19), plus interest calculated at $164.18 per day from that date until today ($49,418.18). Defendants have not contested the amount due, if any, under the lease.